UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ERICA T. BROOKS,                          )
                                          )
                    Plaintiff,            )
                                          )          No. 1:05-cv-328
v.                                        )
                                          )          *Collier / Lee*
INVISTA (KOCH INDUSTRIES),                )
                                          )
                    Defendant.            )


## REPORT AND RECOMMENDATION

The Court granted Defendant's motions for summary judgment [*see* Doc. Nos. 29, 36, 41 & 43]. In addition, the Court granted Defendant's request for an award of its attorneys' fees in defending Plaintiff's Title VII[1] claims, but denied Defendant's request for an award of its attorneys' fees in defending Plaintiff's state law retaliatory discharge claims [Doc. No. 41].

This matter was referred for a determination of the amount of attorneys' fees incurred by Defendant in defending Plaintiff's Title VII claims [*id.*]. Matters pertinent to the amount of attorneys' fees have been fully briefed and are now ripe [Doc. Nos. 52, 56, 59, 60 & 61]. Both parties agree the issue can be resolved by the Court based upon the record and without an evidentiary hearing [Doc. Nos. 61 & 62].

For the reasons set forth herein, I **FIND** the amount of reasonable fees for Defendant's defense of the Title VII claims is **$53,072.50**.

---

[1] Title VII of the Civil Rights Act of 1964 §§ 701-718, 42 U.S.C. §§ 2000e-17.

# I. Factual and Procedural Background

With respect to the referred determination of the amount of attorneys' fees, the Defendant submitted the affidavit of its counsel, Teresa Bult [Doc. No. 52-2]. In her affidavit, Ms. Bult sets out the hours worked by counsel in defending the Title VII claims and the billing rates applicable to said work [*id.* at ¶¶ 5-7]. The following chart summarizes the hours and rates information provided in Ms. Bult's affidavit at paragraphs 5-7:

| ATTORNEY | HOURS | RATES | TOTAL |
|----------|-------|-------|-------|
| Ms. Bult | 51.9 | $285.00 | $14,791.50 |
| Ms. Bult | 74.8 | $268.00 | $20,046.40 |
| Ms. Bult | 9.9 | $250.00 | $ 2,475.00 |
| Mr. Barker | 73.2 | $265.00 | $19,398.00 |
| Mr. Barker | 159.1 | $232.00 | $36,911.20 |
| Mr. Barker | 2.0 | $215.00 | $   430.00 |
| Other Atty | 14.1 | $220.00 | $ 3,102.00 |
| Paralegals | 3.5 | $105.00 | $   367.50 |

Defendant asserts the total amount of attorneys' fees incurred by Defendant to defend all of the claims, including the state law claims, is $93, 016.40 [*id.* at ¶ 9].[2] Initially, Defendant sought an award of $75,992.42 in fees for defense of the Title VII claims [*id.* at ¶ 12].[3]

---

[2] Ms. Bult's affidavit contains some inconsistent numbers. For example, while paragraph 9 states the total fees were $93,016.40, the breakdown of the fees noted in the chart above and in the redacted billing statements indicate the total fees were actually $97,521.60. I will use the lesser figure herein. All references herein to paragraph 9 of Ms. Bult's affidavit are to the first numbered paragraph 9, not the final numbered paragraph 9.

[3] In the brief, Defendant correctly states the figure as being $72,992.92, not $72,992.42 [Doc. No. 52].

Ms. Bult opined the fees and rates charged were reasonable [*id.* at ¶ 8][4]. The Defendant also provided an affidavit of attorney W. Ferber Tracy,[5] wherein Mr. Tracy opined the rates charged to Defendant by counsel were reasonable, normal and customary in the local legal community [Doc. No. 52-3].

With respect to the division of attorneys' fees charged for work solely on the Title VII claims, Defendant stated the bulk of its defense was related to the Title VII claims [Doc. No. 52-2 at ¶ 10]. Defendant stated that, because at least three-fourths of the claims asserted by Plaintiff were related to Title VII, it has requested an award of 75% of the attorneys fees incurred for work prior to the Court's summary judgment ruling on February 9, 2007 [*id.*]. The total fees related to defending the action prior to February 9, 2007 were $68,093.90 [*id.* at ¶ 10]. Applying the 75% allocation requested by Defendant results in fees of $51,070.42 [*id.*].

The Defendant requested 100% of the fees related to its supplemental motion for summary judgment and trial preparation from February 9, 2007 through February 28, 2007, because only Title VII claims remained at the time those fees were incurred [*id.* at ¶ 11]. Fees incurred during this time period total $24,922.50 [*id.* at ¶ 11]. Thus, as noted above, Defendant originally requested a total award of $75,992.92 [*see id.* at ¶ 12].

In response, Plaintiff objected to not being provided with a copy of the billing statements for the fees charged by counsel [Doc. No. 56]. Plaintiff also objected to the allocation of 75% of the fees to the Title VII claims [*id.*]. Plaintiff argued there was no proof submitted that the fees were

---

[4] This is the first paragraph bearing the number 8, not the penultimate paragraph bearing the number 8.

[5] Mr. Tracy is a well-respected attorney who has practiced in the Chattanooga area for over 40 years [*see* Doc. No. 52-3].

actually paid by Defendant [*id.*]. Finally, Plaintiff objected to certain hours worked, in particular hours billed by paralegals and associates, claiming they were excessive but not stating why she believed so [*id.*]. Plaintiff also filed the affidavit of Attorney Phillip A. Noblett[6] who opined the prevailing rate for compensation of counsel in district court in Chattanooga for defending civil rights claims ranges from $175 to $200 per hour [Doc. No. 56-2].

In response to Plaintiff's objection and a status conference with the undersigned, counsel for Defendant apparently provided redacted billing statements to counsel for Plaintiff for the time period covering December 16, 2005 through February 28, 2007. Plaintiff subsequently "tendered" them to the undersigned for *in camera* review [Doc. No. 60].

Along with the redacted billing statements, Plaintiff filed "second objections" [Doc. No. 59]. Plaintiff again raised the issue of whether the fees would be paid by Defendant at the rate charged, raised an issue of whether the Court's order applied to fees incurred after February 9, 2007, requested a maximum allocation of 50% for pre-February 9, 2007 fees, and requested exclusion of certain charges [*id.*].

Defendant filed a response to the second objection in which Defendant agreed to resolve the claim on the basis of a 50% (as opposed to 75%) recovery of fees incurred prior to February 9, 2007, but argues there should be no further reductions [Doc. No. 61]. Defendant noted it could not understand any contention that time incurred on the Title VII claims after February 9, 2007 is not recoverable under the Court's order because all time spent after February 9, 2007 was related to the defense of Title VII claims as those were the only remaining claims after the Court's order [*id.*]. The

---

[6] Mr. Noblett is a well-respected attorney who has practiced in the area for many years [Doc. No. 56-2].

Defendant also noted its effort to avoid incurring additional fees after the Court's February 9, 2007 order, and its effort to avoid all fees, and Plaintiff's "refusal" to withdraw the remaining claims [*id.*].

## II. Analysis

### A. Legal Standards

The parties apparently agree the record has been fully developed through their briefs and affidavits and neither has requested an evidentiary hearing [Doc. Nos. 61 & 62]. Thus, I will determine the proper amount of the fees without an evidentiary hearing as none is required by law or requested. *See Bailey v. Heckler*, 777 F.2d 1167, 1171 (6th Cir. 1985).

The Supreme Court has established that in fee-shifting cases the basis of a fee award is the proven number of hours reasonably expended multiplied by a reasonable hourly rate, commonly called the "lodestar."[7] *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Geier v. Sundquist,* 372 F.3d 784 (6th Cir. 2004); *Adcock-Ladd v. Secretary of the Treasurery,* 227 F.3d 343, 349 (6th Cir. 2000); *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). The reasonableness of the hours expended and the attorney's hourly rate must be considered on a case-by-case basis. *Hensley*, 461 U.S. at 429. Counsel is expected to exercise "billing judgment" in seeking an award of fees. *Id.* at 434.

The burden of establishing the reasonable fee is on the fee applicant. *Hensley,* 461 U.S. at 433;

---

[7] There are twelve factors which the district court may consider in determining the basic lodestar fee and whether to make adjustments thereto. *Reed*, 179 F.3d at 471; *see also Hensley*, 461 U.S. at 434 n. 9. These factors are:

(1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed*, 179 F.3d at 472 n. 3; *see also Hensley*, 461 U.S. at 430 n.3.

*Reed*, 179 F.3d at 472 (6th Cir. 1999). The fees requested should be documented, and, where they are not, the district court may reduce the award accordingly. *Reed*, 179 F.3d at 472. "The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for attorneys." *Geier,* 372 F.3d 791 (quoting *Reed*, 179 F.3d at 471).

In determining the appropriate hourly rate to apply, the district court must consider the prevailing market rate in the relevant community for the same type of work at issue. *Adcock-Ladd,* 227 F.3d at 350; *Reed*, 179 F.3d at 473. The "relevant community" for fee purposes is the legal community within the court's territorial jurisdiction or venue. *Adcock-Ladd,* 227 F.3d at 350; *Hudson v. Reno*, 130 F.3d 1193, 1208 (6th Cir. 1997), *cert. denied*, 525 U.S. 822 (1988). The "prevailing market rate" is that rate which lawyers of comparable skill and experience can reasonably expect to command within the relevant community. *Id.* That rate may not, however, exceed the amount necessary to cause competent legal counsel to perform the work required. *Coulter v. Tennessee*, 805 F.2d 146, 148 (6th Cir. 1986), *cert. denied*, 482 U.S. 914 (1987); *see also Adcock-Ladd*, 227 F.3d at 349. "Such fees are different from the prices charged well-to-do clients by the most noted lawyers and renowned law firms in a region. Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate." *Coulter*, 804 F.2d at 149; *see also Reed*, 179 F.3d at 472 (same); *Hudson*, 130 F.3d at 1208 (same)

The Supreme Court has held reasonable attorneys' fees provided by statute include compensation for the work of paralegals and law clerks, and they should be compensated at the rates at which their services are billed to clients. *Missouri v. Jenkins,* 491 U.S. 274 (1989).

Hours which are "excessive, redundant, or otherwise unnecessary," are not reasonably expended. *Hensley*, 461 U.S. at 430 434. The Sixth Circuit has held that "the district court must not only articulate findings of fact and conclusions of law regarding the *inclusion* of hours amounting to the fee awarded, but those regarding the *exclusion* of hours as well." *Glass v. Sec'y of Health & Human Services*, 822 F.2d 19, 22 (6th Cir. 1987).

While the lodestar method is the appropriate starting place for determining attorneys' fees, the inquiry does not end there. Other considerations may lead the district court to adjust the fee. For example, the court may consider the degree of success obtained. *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (citing *Hensley*, 461 U.S. at 436); *Cramblit v. Fiske*, 33 F.3d 633, 635 (6th Cir. 1994). Likewise, a plaintiff's ability to pay and financial resources may be taken into account under certain circumstances. Where the fee applicant is a defendant as opposed to a plaintiff, as is the case here, the court may consider the plaintiff's ability to pay in determining the proper amount of the attorneys' fee award. *Wolfe v. Perry*, 412 F.3d 707, 724 (6th Cir. 2005) ("a nonprevailing plaintiff's ability to pay may be used as a factor to determine the size of the award, but not whether an award is appropriate in the first place."). *See also Toliver v. County of Sullivan*, 957 F.2d 47, 49-50 (2d Cir. 1992); *Kraeger v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1544 (11th Cir. 1985).

## B.    Findings and Conclusions

Each of Plaintiff's arguments will be addressed herein. Plaintiff contends Defendant has not proven Defendant will pay or has paid attorneys' fees. Plaintiff's argument that the alleged lack of evidence of payment prevents a determination of the amount of awarded fees is not supported by citation to any authority. The attorneys' fees were clearly incurred, and Plaintiff has provided no authority that evidence of payment must be submitted. More importantly, and while more careful

drafting of Ms. Bult's affidavit might have avoided the argument altogether,[8] Plaintiff's contention is not supported by the record. The redacted billing statements clearly reflect the fees are being paid by Defendant, with the last statement showing a previous unpaid balance of only $6,002.84.

Plaintiff's argument that the request for fees may include "double billing" as it relates to Plaintiff's administrative charge is completely unsupported. The redacted billing statements do not indicate charges for work performed prior to the filing of the complaint even if the Court were to conclude such charges were not recoverable. The initial time entry for services rendered on the redacted billing statements was recorded on December 16, 2005, after the complaint was filed November 22, 2005. It is far from clear whether Plaintiff even intended to pursue this argument after the redacted billing sheets were provided. To the extent Plaintiff does intend to pursue this argument, it is meritless.

Plaintiff's argument that no fees incurred after February 9, 2007 should be awarded, is likewise meritless. The February 9, 2007 order specifically reserved ruling on the issue of attorneys' fees pending a decision by trial or motion of the remaining Title VII claims [Doc. No. 29]. The Court's order granting summary judgment on the remaining claims and awarding attorneys' fees was entered February 28, 2007 [Doc. No. 41], three business days prior to the start of the trial. Plaintiff's suggestion the Court limit its award of fees to work performed prior to February 9, 2007 is neither supported by the record nor credible.

With respect to Plaintiff's specific objections to certain time entries, Plaintiff largely provides no explanation of why she objects to most of the entries. For those few entries she notes

---

[8] Defendant's brief states the total fees "billed and paid" were $93,016.40 citing Ms. Bult's affidavit at paragraph 9 [Doc. No. 52 at 3 n. 1], while the actual language of the affidavit states only that the fees were "incurred."

are excessive, she provides no reason why she contends the fees are excessive. The affidavit of Mr. Noblett does not in any way suggest the charges are excessive. Having reviewed the time entries, I cannot conclude the time was excessive or duplicative. It is not unusual for a case to require the attention of more than one lawyer, and the reduction in the overall request for fees recommended herein more than adequately takes care of any alleged duplication. I also note Defendant has not sought fees associated with time spent by counsel in connection with the determination of the amount of the awarded attorneys' fees.

The Defendant has agreed to a 50% reduction of the fees incurred prior to February 9, 2007 even though Defendant contends more than 75% of the time charged related to defending the Title VII claims. While this is the maximum percentage allocation the Plaintiff indicated was acceptable, based on my review of the time entries, the reduction appears generous to Plaintiff. Under these circumstances, further reduction in the claimed hours is not reasonable. Indeed, it appears Defendant has exercised "billing judgment" with respect to its claim for fees, and could have pursued additional fees if it had chosen to do so. Thus, I conclude the hours spent defending the Title VII claims are reasonable.

With respect to the rate billed for attorney services, Mr. Noblett did not state the rate billed by Defendant's counsel was excessive, although it is apparently more than he charges and more than the rates he believes are normal in the local area for this type of work. In contrast, Ms. Bult and Mr. Tracy both opined the billed rates are reasonable and Mr. Tracy opined they were customary for the market and type of services provided. No information was provided regarding the experience or expertise of Ms. Bult and Mr. Barker in defending Title VII claims, although her affidavit notes Ms. Bult is the managing member of her firm [Doc. No. 52-2]. Likewise, no information was provided

regarding Defendant's need to hire Nashville counsel to defend a case in the Southern Division of the Eastern District of Tennessee.

Mr. Tracy's affidavit notes the rates charged by defense counsel range from $220.00[9] to $285.00 per hour, with an average rate of $255.00 [Doc. No. 52-3]. While a well-to-do client may be willing to pay the rates requested by counsel, the court may not award fees which "exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." *Reed,* 179 F.3d at 472.

Fee awards in the Eastern District of Tennessee indicate that the hourly rates necessary to secure competent representation in employment discrimination cases in this region are lower than those requested by the Defendant, and perhaps lower than the prevailing rates in the Nashville market. *See Adcock-Ladd,* 227 F.3d at 349 (prevailing market rate in Knoxville, Tennessee for attorney experienced in employment discrimination law is $150.00 per hour); *Hudson*, 130 F.3d at 1208 (same); *Lawrence v. Pizza Hut of America, Inc.*, No. 1:97-CV-311 (E.D. Tenn. Dec. 11, 1998) (Collier, J.) (awarding hourly rate of $150.00 for work performed by experienced counsel in Title VII case). Even adjusting these rates for increases in hourly billing rate since the dates these decisions were rendered, I conclude some reduction is appropriate for all attorney time.

Reducing the hourly rate by 10% brings the fees within an acceptable range based on the evidence and the Court's prior decisions. Therefore, I recommend a reduction of 10% to the rates charged. A reduction of 10% results in a average billing rate for the attorneys' time of $229.50 based on the average rate provided in Mr. Tracy's affidavit. While this is a little more than the rates

---

[9] According to the redacted billing statements, Mr. Barker actually had a rate of $215.00 at one point.

Mr. Noblett opined were customary, it is certainly less than the rates Mr. Tracy opined were reasonable in the local market.

Fees incurred prior to February 9, 2007 ($68,093.90) reduced by 10% ($6,809.39) amount to $61,284.51. Fees incurred from February 9 through February 27, 2007 ($24,922.50) reduced by 10% ($2,492.25) amount to $22,430.25. Adding 50% of the reduced rate fees incurred prior to February 9, 2007 ($30,642.25) to 100% of the reduced rate fees incurred from February 9 through February 27, 2007 ($22,430.25) results in a lodestar fee of $53,072.50.

No information was provided by Plaintiff concerning her ability to pay and/or her financial resources. Thus, such concerns have not been taken into account.

Accordingly, I **FIND** the amount of reasonable fees for defense of the Title VII claims is **$53,072.50**.

### B.    Defendant's Redacted Billing Statements

One item remains to be addressed; namely, the submission of defense counsel's redacted billing statements for *in camera* inspection. No showing has been made that these redacted statements warrant filing under seal. Absent good cause shown, documents will not be placed under seal. *Brown & Williamson Tobacco Corp. v. Federal Trade Commission*, 710 F.2d 1165, 1177-81(6th Cir. 1983); *Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996); E.D. TN. LR 26.2.

The parties shall have five days from the entry of this report and recommendation to file an appropriate motion if either party contends the Defendant's redacted statements should be filed under seal. If no such motion is timely filed, the redacted statements will be placed in the Court record. To the extent such a motion is filed it will be addressed in due course. The filing of and

resolution of any such motion does not alter the parties' obligations concerning the timely filing of any objections to this report and recommendation.

## III. Conclusion

For the reasons set forth above, I **RECOMMEND**[10] an award of attorneys' fees of **$53,072.50** as the reasonable fees incurred by Defendant in defending Plaintiff's Title VII claims.

It is hereby **ORDERED** that the parties shall have five days from the entry of this report and recommendation to file an appropriate motion if either party contends if Defendant's redacted billing statements should be filed under seal.

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[10] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).